# CLEARY GOTTLIEB STEEN & HAMILTON LLP

One Liberty Plaza
New York, NY 10006-1470
T: +1 212 225 2000
F: +1 212 225 3999

clearygottlieb.com

WASHINGTON, D.C. · PARIS · BRUSSELS · LONDON · MOSCOW
FRANKFURT · COLOGNE · ROME · MILAN · HONG KONG
BEIJING · BUENOS AIRES · SÃO PAULO · ABU DHABI · SEOUL

STEVEN M. LOEB
CRAIG B. BROD
NICOLAS GRABAR
DAVID E. BRODSKY
RICHARD J. COOPER
JEFFREY S. LEWIS
PAUL J. SHIM
STEVEN L. WILNER
ANDRES DE LA CRUZ
DAVID C. LOPEZ
MICHAEL A. GERSTENZANG
LEV L. DASSIN
JORGE U. JUANTORENA
MICHAEL D. WEINBERGER
DAVID LEINWAND
DIANA L. WOLLMAN
JEFFREY A. ROSENTHAL
MICHAEL D. DAYAN
CARMINE D. BOCCUZZI, JR.
JEFFREY D. KARPF
KIMBERLY BROWN BLACKLOW
ROBERT J. RAYMOND
FRANCISCO L. CESTERO
FRANCESCA L. ODELL
WILLIAM L. MCRAE
JASON FACTOR
JOON H. KIM
MARGARET S. PEPONIS
LISA M. SCHWEITZER
JUAN G. GIRÁLDEZ
DUANE MCLAUGHLIN
BREON S. PEACE
CHANTAL E. KORDULA

BENET J. O'REILLY
ADAM E. FLEISHER
SEAN A. O'NEAL
GLENN P. MCGRORY
MATTHEW P. SALERNO
MICHAEL J. ALBANO
VICTOR L. HOU
ROGER A. COOPER
AMY R. SHAPIRO
JENNIFER KENNEDY PARK
ELIZABETH LENAS
LUKE A. BAREFOOT
JONATHAN S. KOLODNER
DANIEL ILAN
MEYER H. FEDIDA
ADRIAN R. LEIPSIC
ELIZABETH VICENS
ADAM J. BRENNEMAN
ARI D. MACKINNON
JAMES E. LANGSTON
JARED GERBER
COLIN D. LLOYD
COREY M. GOODMAN
RISHI ZUTSHI
JANE VANLARE
DAVID H. HERRINGTON
KIMBERLY R. SPOERRI
AARON J. MEYERS
DANIEL C. REYNOLDS
AUDRY X. CASUSOL
ABENA A. MAINOO
HUGH C. CONROY, JR.
JOSEPH LANZKRON

MAURICE R. GINDI
KATHERINE R. REAVES
RAHUL MUKHI
ELANA S. BRONSON
MANUEL SILVA
KYLE A. HARRIS
LINA BENSMAN
ARON M. ZUCKERMAN
KENNETH S. BLAZEJEWSKI
MARK E. MCDONALD
F. JAMAL FULTON
RESIDENT PARTNERS

SANDRA M. ROCKS
JUDITH KASSEL
PENELOPE L. CHRISTOPHOROU
BOAZ S. MORAG
MARY E. ALCOCK
HEIDE H. ILGENFRITZ
ANDREW WEAVER
HELENA K. GRANNIS
JOHN V. HARRISON
NEIL R. MARKEL
LAURA BAGARELLA
JONATHAN D.W. GIFFORD
SUSANNA E. PARKER
DAVID W.S. YUDIN
RESIDENT COUNSEL

LOUISE M. PARENT
OF COUNSEL

May 12, 2021

BY ECF

The Honorable Denise L. Cote
United States District Judge
Southern District of New York
500 Pearl Street, Courtroom 18B
New York, NY 10007

**<span style="color:red">MEMO ENDORSEMENT</span>**

Re:  United States v. Daniel B. Kamensky, 21 Cr. 67 (DLC)

Dear Judge Cote:

We represent defendant Daniel Kamensky in the above-referenced matter. As the Court is aware, on May 7, 2021, Mr. Kamensky appeared before Your Honor for sentencing following his February 3, 2021 guilty plea to one count of bankruptcy fraud under 18 U.S.C. § 152(6). The Court sentenced Mr. Kamensky to six months' imprisonment and six months' supervised released with the condition of home confinement. The Court directed Mr. Kamensky to surrender to a designated facility on June 18, 2021. The Judgment was issued on May 10, 2021.

We write respectfully to request that the Court allow for a postponement of the surrender date by approximately three months to a date after the end of September 2021. As set forth below, such postponement will allow Mr. Kamensky to potentially avoid the unnecessary and unintended consequences of serving a significant portion of his sentence under the harshest conditions of solitary confinement as a result of the Bureau of Prisons' ("BOP") current COVID protocols. Such postponement will also permit Mr. Kamensky to continue—and complete—the necessary service he has been providing the independent liquidator in unwinding Marble Ridge and allow for him and his family to prepare more fully for his incarceration. We have consulted with the Government, and they take no position with respect to this request.

Solitary Confinement

We understand based on our review of publicly available materials and consultations with individuals familiar with the BOP's pandemic-related practices and protocols that the BOP is

currently requiring every federal inmate to serve 21 days in quarantine in entering into and leaving any federal facility. In our sentencing submission dated April 23, 2021 ("Sentencing Submission"), we noted that the BOP's published guidance states that the quarantine period will be "at least 14 days." *See* https://www.bop.gov/coronavirus/covid19_status.jsp; Sentencing Submission at 43. Based on further inquiry and review, we have been informed that the BOP's current practice is to require quarantine for new incoming and outgoing inmates of 21 days. *See, e.g., United States v. Konny*, 2021 WL 465910 at *2 (S.D.N.Y. 2021) ("[T]he defendant will be required to quarantine for 21 days before release."). We also understand that this quarantine requirement applies to fully vaccinated inmates as well (which Mr. Kamensky is), even though vaccinated inmates do not pose a meaningful risk of spreading the virus.

In order to comply with the quarantine requirements, federal facilities have been applying the strictest "solitary confinement" procedures ordinarily reserved for punitive and disciplinary purposes. As the Court is aware, "solitary confinement" in federal facilities typically entails being locked up 24 hours in a small isolation cell (approximately eight feet by ten feet) within the Special Housing Units, with no time outside of the cell except for a brief shower approximately twice per week, with one 15-minute phone call per month, meals served under the cell door, no visitation privileges, and virtually no human interaction except for periodic observation by the officer on duty. We understand that application of the "solitary confinement" rules to comply with the COVID protocol (including for fully vaccinated individuals) is expected to be in effect for the foreseeable future, and we are not aware of any current plans to modify the rules in the near term.

Thus, if Mr. Kamensky were to surrender to a federal facility on June 18, he will begin by serving 21 days in solitary confinement, and potentially serving another 21 days in solitary confinement as he leaves the facility, if the COVID protocols are not changed. That would mean Mr. Kamensky would have to serve a significant part of his six-month sentence of imprisonment in the absolutely harshest and cruelest conditions of confinement. That is obviously a consequence that is not justified by Mr. Kamensky's conduct or any need for punishment; rather, it would simply be the unfortunate (and avoidable) result of his having to commence his sentence during this unprecedented pandemic and before the protocols can be modified to reflect changes in the BOP's risk assessment, including the handling of fully vaccinated inmates. Serving 21 days (and potentially even more if protocols do not change) in solitary confinement would have a severely negative and potentially lasting impact on Mr. Kamensky's mental health, particularly considering the psychiatric issues that he has been and continues to suffer through. *See* PSR ¶¶ 72-75; Ex. 104 to the Sentencing Submission (Dr. Blumberg's Report). Studies over years have uniformly found that solitary confinement of this type leads to long-term deleterious effects on even the mentally healthy and even more so on those who already suffer from psychiatric issues.[1] Indeed, the United Nations has recognized prolonged solitary confinement as "cruel"

---

[1] *See, e.g.*, Stuart Grassian, *Psychiatric Effects of Solitary Confinement*, 22 Wash. U. J. L. & Pol'y 325, 353 (2006) (explaining that "long-term effects"—including "persistent symptoms of post-traumatic stress (such as flashbacks, chronic hypervigilance, and a pervasive sense of hopelessness)" as well as "lasting personality changes" such as "a continuing pattern of intolerance of social interaction"—"may persist for decades."); Craig Haney & Mona Lynch, *Regulating Prisons of the Future: A Psychological Analysis of Supermax and Solitary Confinement*, 23 N.Y.U. Rev. L. & Soc. Change 477, 531 (1997) ("There is not a single study of solitary confinement wherein non-voluntary confinement that lasted for longer than 10 days failed to result in negative psychological effects. The deleterious

and "degrading" treatment akin to torture.[2] For that reason, among others, a number of states including New York have taken measures to phase out and limit the use of solitary confinement in our jails. Just last month, New York State enacted the HALT Solitary Confinement Act that limited the amount of time an incarcerated person can spend in solitary confinement to 15 days, while exempting certain vulnerable individuals including those with serious mental illness, entirely from solitary confinement. HALT Act, N.Y. Senate-Assembly Bill S2836, A2277A (enacted Apr. 1, 2021).

Here, the unwarranted imposition of at least 21 days of harsh solitary confinement—something no one believes is necessary or appropriate for Mr. Kamensky or is in any way tied to his conduct—could be avoided if he were permitted to surrender at a time when such COVID protocols (particularly for fully vaccinated inmates) are no longer in effect. With improving pandemic conditions and increased levels of vaccinations, a modest postponement of the surrender date as requested could make the difference between his serving the sentence the Court imposed (6 months' imprisonment under normal conditions) or serving the unnecessarily cruel conditions of 21 days (and potentially 42 days, if the protocols are not changed) in solitary confinement.

### Liquidation of the Marble Ridge Fund

As the Court is aware, shortly after July 31, 2020, in order to protect his investors' interests, Mr. Kamensky made the difficult decision to close Marble Ridge by retaining an independent liquidator. As set forth in a letter previously submitted by Christopher Kennedy of Alvarez & Marsal as Joint Voluntary Liquidator the ("Liquidator"), *see* Ex. 96 to the Sentencing Submission, Mr. Kamensky has been working closely and diligently with the Liquidator to maximize the investors' recovery. Following the imposition of sentence, we consulted again with the Liquidator and inquired about the impact of having Mr. Kamensky surrender on June 18, 2021 and the potential that he would be unavailable for up to 21 days upon entering a facility without telephone contact. They have noted in another letter attached hereto that it would be "detrimental, from [their] perspective to the efficient wind-down of the Funds," as he "retains a significant level of knowledge and expertise regarding the Funds' remaining investments and his involvement in the realization of the remaining assets is key to maximizing the returns of the Funds' investors." Ex. A (Liquidator's Letter dated May 11, 2021) at 1. The Liquidator anticipates that the unwinding of the funds will be largely complete by September 30, 2021. Thus, a postponement of the surrender date to after September 30, 2021 will allow Mr.

---

effects varied in severity and included hypertension, uncontrollable anger, hallucinations, psychosis, chronic depression, and suicidal thoughts and behavior.")

[2] United Nations General Assembly, United Nations Standard Minimum Rules for the Treatment of Prisoners (the Nelson Mandela Rules), Rule 43 (Jan. 8, 2016), *available at* https://undocs.org/A/RES/70/175 (identifying "indefinite" and "prolonged" solitary confinement—along with corporal punishment, starvation, and placement in a dark or constantly lit cell—as a prohibited form of punishment that "amount[s] to torture or other cruel, inhuman or degrading treatment or punishment"); *id.* Rule 44 (defining "solitary confinement" as "the confinement of prisoners for 22 hours or more a day without meaningful human contact" and defining "prolonged solitary confinement" as "solitary confinement for a time period in excess of 15 consecutive days"); *id.* Rule 45 ("The imposition of solitary confinement should be prohibited in the case of prisoners with mental or physical disabilities when their conditions would be exacerbated by such measures.").

Kamensky to continue to work closely with the Liquidator to ensure an effective wind-down of the fund and maximizing investors' recovery.

### Other Considerations

In addition to avoiding the conditions of long-term solitary confinement (unnecessary and unintended here) and allowing for the more effective wind-down of Marble Ridge, a delay in the surrender date also would permit Mr. Kamensky and his family to better prepare for his time in incarceration. Although Mr. Kamensky's family understood that he faced a sentence that included a potential period of incarceration, the actual imposition of sentence and the fact that he now faces an extended period of time in solitary confinement (with virtually no outside contact allowed during that period) has been particularly hard on his family. A surrender date after the end of September would allow for Mr. Kamensky to better manage the impact that his incarceration will have on them.

### Conclusion

For the reasons set forth above, we respectfully request that the Court permit the postponement of the surrender date for Mr. Kamensky to a date after September 30, 2021.

Respectfully submitted,

Joon H. Kim
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York  10006
jkim@cgsh.com
212-225-2950

Lawrence Gerschwer
BARNES & THORNBURG LLP
445 Park Avenue
Suite 700
New York, New York 10022
lawrence.gerschwer@btlaw.com
(646) 746-2022

*Attorneys for Daniel B. Kamensky*

cc:   AUSA Richard Cooper (by email)
      AUSA Daniel Tracer (by email)

*[Handwritten annotation:]* The conditions for quarantine depend on the facility to which a defendant is designated and the number of inmates surrendering on a particular day.

4 This application is denied.

*Judge Cote*
*May 14, 2021*